**LAW OFFICES OF**
**O'KEKE & ASSOCIATES, P.C.**
801 FRANKLIN AVENUE.
BROOKLYN NY, 11238
PHONE: (718) 855-9595
Attorney(s) for defendants

_____

| | |
|---|---|
| DENNIS WILSON and FEABON THOMAS, | **: UNITED STATES DISTRICT COURT** |
| each on behalf of themselves, individually, and all | **: EASTERN DISTRICT OF NEW YORK** |
| others similarly situated, | **:** |
| | **:  CASE No. : 15-CV-02994** |
| Plaintiffs, | **:** |
| | **:       (WFK) (RLM)** |
| against | **:** |
| | **:** |
| ETS SERVICES INC., and LOUISON & | **:** |
| PANCHAM TRANSPORTATION CORP., and | **:** |
| ALLIED AIRPORT SHUTTLE SERVICE, INC., | **:** |
| and COLETTE STEVENS and ALBERT HOYTE, | **:** |
| both individuals, | **:** |
| | **:** |
| Defendant(s). | **:** |

_____

# DEFENDANTS' MEMORANDUM OF LAW IN

# OPPOSITION TO PLAINTIFFS' MOTION FOR

# PARTIAL SUMMARY JUDGMENT

## *(Served on Plaintiffs on April 14, 2017)*

**John Iwuh, Esq.**
**O'Keke & Associates, P.C.**
**Attorneys for Defendants**
**801 Franklin Avenue,**
**Brooklyn, New York 11238**
**Tel. No.  :(718) 855-9595**
**Direct Dial: (347) 442-5089**

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ------------------------------------------------------------------- **iii**

**PRELIMINARY STATEMENT** ---------------------------------------------------------- **1**

**STATEMENT OF FACTS** ------------------------------------------------------------------ **3**

**SUMMARY JUDGMENT STANDARD** ------------------------------------------------ **3**

**LEGAL ARGUMENT** ------------------------------------------------------------------------**5**

    **POINT I**

        **IT IS UNDISPUTED THAT PLAINTIFFS WERE INDEPENDENT CONTRACTORS UNDER THE FAIR LABOR STANDARDS ACT ("FLSA") AND NOT EMPLOYEES** ------------------------------------------ **5**

    **A.**     **DEGREE OF CONTROL**…………………………………………………… **6**

    **B.**     **THE OPPORTUNITY FOR PROFIT OR LOSS AND INVESTMENT IN THE BUSINESS**…………………………………………………….. **10**

    **C.**     **THE DEGREE OF SKILL AND INDEPENDENT INITIATIVE REQUIRED TO PERFORM THE WORK**………………………………… **12**

    **D.**     **THE PERMANENCE OR DURATION OF THE RELATIONSHIP**……... **13**

    **E.**     **THE EXTENT TO WHICH EMPLOYEES ARE INTEGRAL TO BUSINESS**…………………………………………………………… **14**

    **POINT II**

        **IT IS UNDISPUTED THAT PLAINTIFFS WERE INDEPENDENT CONTRACTORS UNDER THE NEW YORK LABOR LAW ("NYLL") AND NOT EMPLOYEES**…………………………………………………. **14**

    **POINT III**

        **IT IS UNDISPUTED THAT PLAINTIFFS WERE NOT ENTITLED TO MINIMUM WAGE UNDER FLSA AND/OR NYLL AND THAT PLAINTIFFS RECEIVED MORE THAN ADEQUATE COMPENSATION FOR THE PASSENGERS THEY TRANSPORTED FOR DEFENDANTS 16**

**POINT IV**

**PLAINTIFFS CANNOT RELY ON THE CONTRACT BETWEEN DEFENDANTS AND THE PORT AUTHORITY TO ESTABLISH THAT THEY WERE EMPLOYEES OF DEFENDANTS............................. 17**

**CONCLUSION--------------------------------------------------------------------------------- 19**

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Pages**

Abouzeid v. Grgas,
295 A.D.2d 376, 743 N.Y.S.2d 165, 166 (2d Dep't 2002)…………………………………16

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)…………………………………4

Arena v. Delux Transp. Services, Inc.,
3 F. Supp. 3d 1 - Dist. Court, ED New York 2014............................................................6, 11, 13

Barak v. Chen,
87 A.D.3d 955, 929 N.Y.S.2d 315, 318 (2d Dep't 2011)………………………………………16

Barfield v. N.Y. City Health & Hosps. Corp.,
537 F.3d 132, 134 (2d Cir. 2008)……………………………………………………………………5

Barrentine v. Arkansas-Best Freight Sys.,
450 U.S. 728, 743 (1981)……………………………………………………………………………19

Brock v. Superior Care, Inc.,
840 F.2d 1054, 1058–59 (2d Cir. 1988)……………………………………………………………...6

Browning v. Ceva Freight, LLC,
885 F. Supp. 2d 590, 608 (E.D.N.Y. 2012)……………………………………………………...8, 14

Bynog v. Cipriani Grp., Inc.,
1 N.Y.3d 193, 198 (2003)………………………………………………………………………… 15

Chaouni v. Ali
963 N.Y.S.2d…………………………………………………………………………………… 16

**Cases**                                                                                           **Pages**

Claim of Pavan,
173 A.D.2d 1036, 570 N.Y.S.2d 696 (3rd Dep't 1991)…………………………………………15

Cronin v. Aetna Life Ins. Co.,
 46 F.3d 196 (2nd Cir. 1995)………………………………………………………………… 4

Edwards v. Publishers Circulation Fulfillment, Inc.,
268 F.R.D. 181, 184 (S.D.N.Y. 2010)………………………………………………………… 15

Gallo v. Prudential Residential Services Ltd., Partnership,
22 F.3d 1219 (2nd Cir. 1994)………………………………………………………………… 4

Gayle v. Harry's Nurses Registry,Inc.,
594 F. App'x 714, HI (2d Cir. 2014)………………………………………………………… 9, 18

Godlewska v. HAD,
916 F. Supp. 2d 246, 260 (E.D.N.Y. 2013)…………………………………………………8

Hana Fin., Inc.,
135 S. Ct. at 911…………………………………………………………………………………19

Hertz Corp.,
 2 N.Y.3d 733, 735, 778 N.Y.S.2d 743 (2004)…………………………………………………15

Heyman v. Commerce & Indus. Ins. Co.,
 525 F.2d 1317 (2d Cir. 1975)……………………………………………………………………4

Irizarry v. Catsimatidis,
 722 F.3d 99, 104–05 (2d Cir. 2013)……………………………………………………………5

Irrutia v. Terrero,
 227 A.D.2d 380, 642 N.Y.S.2d 328, 329 (2d Dep't 1996)……………………………………16

Jacobson v. Comcast Corp.,
740 F. Supp. 2d 683, 691-92 (D. Md. 2010)…………………………………………………8

Kavazanjian v. Naples,
2006 WL 2795220, at *1 (E.D.N.Y. Sept. 26, 2006)…………………………………………16

Kirsch v. Fleet Street, Ltd.,
148 F.3d 149, 171 (2d Cir. 1998)………………………………………………………………9

Leach v. Kaykov, 2011 WL 1240022,*19 (E.D.N.Y. 2011)……………………………………13

**Cases**                                                                                              **Pages**

Lauritzen. 835 F.2d at 1542 …………………………………………………………………19

Lendino v. Trans Union Credit Information Co.,
 949 F.2d 970 (2nd Cir. 1992)……………………………………………………………4, 19

Lilley v. BTM Corp.,
 958 F.2d 746, 750 n. 1 (6th Cir. 1992)………………………………………………………19

Nassau Edu. Chapter of Civil Service Employees Ass'n, Inc.,
 85 A.D.2d 733, 445 N.Y.S.2d 812 (1981)…………………………………………………9, 18

Overton v. N.Y. State Div. of Military & Naval Affairs,
 373 F.3d 83, 89 (2d Cir.2004)…………………………………………………………………4

Redd v. N.Y. State Div. of Parole,
 678 F.3d 166, 174 (2d Cir. 2012)……………………………………………………………5

Rutherford  Food  Corp.  v. McComb,
 331  U.S.  722, 730 (1947)……………………………………………………………………6

Saleem v. Corporate Transp. Group, Ltd.,
 52 F. Supp. 3d 526 - Dist. Court, SD New York 2014 at 540………………………………11, 13

Schwabenbauer v. Board of Education,
 667 F.2d 305, 313 (2nd Cir. 1981)……………………………………………………………4

Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,
 391 F.3d 77, 83 (2d Cir.2004)…………………………………………………………………4

United States v. Gaudin,
 515 U.S. 506, 512 (1995)……………………………………………………………………19

Velu v. Velocity Express, Inc.,
 666 F. Supp. 2d 300 - Dist. Court, ED New York 2009 at 307-08……………………………14

Wang v. Hearst Corp.,
 2016 WL
 4468250…………………………………………………………………………………16

**Statutes and Rules**                                                                                 **Pages**

Fed.R.Civ.P. 56(a)………………………………………………………………………...3

Local Civil Rule 56.1…………………………………………………………………...3, 6

**LAW OFFICES OF**
**O'KEKE & ASSOCIATES, P.C.**
801 FRANKLIN AVENUE.
BROOKLYN NY, 11238
PHONE: (718) 855-9595
Attorney(s) for defendants

_____

| | |
|---|---|
| DENNIS WILSON and FEABON THOMAS, | : **UNITED STATES DISTRICT COURT** |
| each on behalf of themselves, individually, and all | : **EASTERN DISTRICT OF NEW YORK** |
| others similarly situated, | : |
| | : **CASE No. : 15-CV-02994** |
| Plaintiffs, | : |
| | : **(WFK) (RLM)** |
| against | : |
| | : |
| ETS SERVICES INC., and LOUISON & | : |
| PANCHAM TRANSPORTATION CORP., and | : |
| ALLIED AIRPORT SHUTTLE SERVICE, INC., | : |
| and COLETTE STEVENS and ALBERT HOYTE, | : |
| both individuals, | : |
| | : |
| Defendant(s). | : |

_____

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, by their attorneys, O'keke & Associates, P.C., submit the following as their Memorandum of Law in Opposition to the Motion for Partial Summary Judgment Pursuant to Rule 56(a) of the Fed.R.Civ.P., brought by Denis Wilson, Feabon Thomas, Michael Cooke, Germaine Allen, Christopher Ricketts, and Cashmere Mudcyh, (collectively referred to as the "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs and defendants had an arrangement whereby plaintiffs transported passengers for defendants. Under this arrangement plaintiffs collected fares directly from passengers and kept 75% of whatever they collected and gave defendants 25%. Three out of the six plaintiffs, namely, Feabon Thomas, Germaine Allen, Michael Cooke, owned the vehicles with which they

transported passengers for the defendants. Denis Wilson owned the vehicle with which he transported passengers for defendants from 2008 to 2012 and leased a vehicle from Louison & Pancham Transportation Corp. from part of 2012 to 2015. Christopher Ricketts and Cashmere Mudcyh also leased their vehicles.   In addition to the percentage plaintiffs got from the fares paid by the passengers they transposed, plaintiffs also receive tips from those passengers, and kept the tips without sharing them with the defendants.

None of the plaintiffs had a written contract with ETS or any other defendant. None of the plaintiffs was asked by the defendants to enter into or sign any written contract. All the transactions between plaintiffs and defendants were governed by verbal agreement.

Plaintiffs did not have fixed hours of work or fixed schedules while transporting passengers for defendants. They could refuse passengers assigned to them by defendants' dispatchers without facing any penalties.

Plaintiff's understanding with defendants was that plaintiffs could quit at anytime if they were not satisfied with the terms and conditions of their services. There was no obligation to work for a certain period of time. Plaintiffs were not required to give notice to defendants before quitting.

None of the plaintiffs was on the payroll of the defendants because the plaintiffs wanted it that way. The plaintiffs wanted to have their independence and be free to use anytime they were not using to transport passengers for defendants to engage in their own business. Some of the plaintiffs had their private businesses by the side while they were transporting passengers for the defendants and they could use the vehicles with which they transported passengers for the defendants to transport their own private passengers.

Plaintiffs could take vacations whenever they wanted and were never told by defendants

2

that they could not leave. Defendants did not stop plaintiffs from traveling out of the country.

Defendants did not punish plaintiffs over passengers' complaints against plaintiffs. Defendants did not monitor plaintiffs while plaintiffs transported passengers for them.

Plaintiffs were not mandated by defendants to take any particular routes while transporting passengers. Defendants were free to use any route they deemed fit. Plaintiffs were not obligated to check in with the dispatch system of defendants. Sometimes plaintiffs could be assigned a job by defendants and they would come from their home to do the job.

Based on the facts of this case it is abundantly clear that plaintiffs were not employees of the defendants either under the Fair Labor Standards Act ("FLSA") or under the New York Labor Law ("NYLL"). They were independent contractors. Thus, plaintiff's Motion for Partial Summary Judgment seeking an order that plaintiffs were employees and that the defendants were liable for failing to pay plaintiffs minimum wage is without merit and should be denied.

Defendants oppose plaintiffs' Motion for Partial Summary Judgment on the grounds discussed in their Memorandum of Law and other opposition papers.

## STATEMENT OF FACTS

For a complete statement of facts, the Court is respectfully referred to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defendants' 56.1 Stmt."") dated April 14, 2017, which is being submitted concurrently herewith.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving

party." <u>Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)</u>. In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," <u>Overton v. N.Y. State Div. of Military & Naval Affairs</u>, 373 F.3d 83, 89 (2d Cir.2004), and a court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," <u>Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.</u>, 391 F.3d 77, 83 (2d Cir.2004).

At the summary judgment level, "not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." <u>Lendino v. Trans Union Credit Information Co</u>. 949 F.2d 970 (2nd Cir. 1992) Where favorable inferences could be drawn in plaintiff's favor, the Court must deny defendant's motion for summary judgment on all relevant issues. <u>Schwabenbauer v. Board of Education</u>, 667 F.2d 305, 313 (2nd Cir. 1981).

"[T]he showing that plaintiff must make as to the elements of the prima facie case in order to defeat a motion for summary judgment is "de minimis". <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196 (2nd Cir. 1995). On a motion for summary judgment, what this Court cannot do is weigh the evidence or try issues of fact. <u>Gallo v. Prudential Residential Services Ltd., Partnership</u>, 22 F.3d 1219 (2nd Cir. 1994) (citing <u>Heyman v. Commerce & Indus. Ins. Co.</u>, 525 F.2d 1317 (2d Cir. 1975). Weighing the evidence is for the trier of fact. Even on the claims that the Court believes that plaintiff may lose at trial, at the summary judgment level, once there are disputed issues of fact, the Court cannot grant summary judgment on those claims - <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11. The Court's only duty is to determine whether there are issues of fact to be tried - <u>Cronin v. Aetna Life Ins. Co.</u>, id.

In evaluating a summary judgment motion, "the evidence of the non-movant is to be believed; all permissible inferences are to be drawn in [the non-movant's] favor; and the court must disregard all evidence favorable to the moving party that the jury is not required to believe." Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 174 (2d Cir. 2012) (internal quotation marks omitted). As a result, "[s]ummary judgment is inappropriate when the admissible materials in the record 'make it arguable' that the claim has merit," or "[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility." Id. (internal quotation marks omitted). "In sum, summary judgment is proper only when, with all permissible inferences and credibility questions resolved in favor of the party against whom judgment is sought, there can be but one reasonable conclusion as to the verdict, i.e., it is quite clear what the truth is." Id. (internal quotation marks omitted).

## LEGAL ARGUMENT

### POINT I

### IT IS UNDISPUTED THAT PLAINTIFFS WERE INDEPENDENT CONTRACTORS UNDER THE FAIR LABOR STANDARDS ACT ("FLSA") AND NOT EMPLOYEES

FLSA applies only to employees, not to independent contractors. To determine whether a plaintiff is an employee for FLSA purposes, courts examine the "economic reality" of a working relationship. Irizarry v. Catsimatidis, 722 F.3d 99, 104–05 (2d Cir. 2013) (citing Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 134 (2d Cir. 2008)). The inquiry is a totality-of-the-circumstances approach, and no one factor is dispositive. Courts balance: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative

required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." Brock v. Superior Care, Inc., 840 F.2d 1054, 1058–59 (2d Cir. 1988) (citations omitted). Courts are also permitted to consider any other factor relevant to the economic reality of the working relationship. Id. at 1059 (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).

### A.   DEGREE OF CONTROL:

Courts require the degree of control exercised over a person performing services to be very substantial in order for the relationship to be construed as employer-employee relationship. For example in Arena v. Delux Transp. Services, Inc., 3 F. Supp. 3d 1 - Dist. Court, ED New York 2014 at 11, the plaintiff claimed that Delux Transp. Services, Inc. exhibited control over him when it mandated that he attend orientation and training; dictated customer service policies and behaviors, and required that he complete forms a particular way and follow a dress code of black pants with a white collared sheet. He also asserted that he was supervised to ensure that he provided safe driving and transportation to the customers. Furthermore, he argued that Delux Transp. Services, Inc. controlled him by requiring him to keep his vehicle clean and free of personal items, and to seek permission to take breaks. The Court found that these factors did not rise to the level of control necessary to impute an employment relationship.

In the case at bar, plaintiffs and defendants had an arrangement wherein plaintiffs transported passengers for defendants. Under this arrangement plaintiffs collected fares directly from passengers and kept 75% of the fares they collected and gave defendants 25%. Please see Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts (hereinafter, Defendants' 56.1 Stmt.") at ¶¶ 83 & 153. None of the plaintiffs had a written contract with any of the defendants. None of the plaintiffs was asked by the defendants to enter into or sign any written

6

contract. All the transactions between plaintiffs and defendants were governed by verbal agreement. (Defendants' 56.1 Stmt. at ¶¶156 & 157.)

Defendants testified that the plaintiffs had the freedom to do what they wanted, come and leave when they wanted; and that they had no control over plaintiffs. Defendants also testified that the plaintiffs were not supervised by the defendants. (Defendants' 56.1 Stmt. at ¶26.) Plaintiff Feabon Thomas testified that he did not have fixed hours of work or fixed schedules while transporting passengers for defendants. (Defendants' 56.1 Stmt. at ¶158.)   Also plaintiffs could refuse jobs assigned to them by defendants' dispatchers without facing any penalties. (Defendants' 56.1 Stmt. at ¶159.) Defendants did not monitor plaintiffs while plaintiffs transported passengers for them and plaintiffs were not mandated by defendants to take any particular routes while transporting passengers. Defendants were free to use any route they deemed fit. (Defendants' 56.1 Stmt. at ¶¶165, & 166.)

Plaintiffs did not have to report to the dispatchers when they departed and arrived at airports. Plaintiffs were not required to contact dispatchers when they completed their trips and they did not need permission from dispatchers to take breaks or leave early. Plaintiff Christopher Allen testified that plaintiffs were not obligated to check in with the dispatch system of defendants. (Defendants' 56.1 Stmt. at ¶ 37.) Sometimes plaintiffs could be assigned a job by defendants and plaintiffs would come from their home to do the job. (Defendants' 56.1 Stmt. at ¶ 168.).

Plaintiff Wilson testified that when he was not transporting passengers for defendants he could use his vehicle to take private customers and do whatever he wanted with his vehicle. (Defendants' 56.1 Stmt. at ¶ 172.)   Defendants did not punish plaintiffs over passengers' complaints against plaintiffs. (Defendants' 56.1 Stmt. at ¶ 164.) When Plaintiff Feabon Thomas

was transporting passengers for defendants he had his own business card with the name "Fabian Transportation" which he would give to potential passengers and customers whom he transported. (Defendants' 56.1 Stmt. at ¶ 169.) Defendants did not require plaintiffs to submit any kind of report from time to time showing how plaintiffs were performing their duties. (Defendants' 56.1 Stmt. at ¶ 175.)

Plaintiff Michael Cooke collected fares amounting to $11,149.77 from passengers and kept it to himself. Despite repeated demands he refused to give defendants their percentage of the money. Plaintiffs did not do anything to him than to request that he stopped transporting passengers for us in September 2012. (Defendants' 56.1 Stmt. at ¶ 173.)

Despite the numerous instances detailed above which clearly show that defendants did not exercise employer-employee type of control over plaintiffs, it is important to point out that the cases are clear that measures taken to ensure compliance with contractual requirements, not to mention passenger safety, do not amount to the sort of day-to-day control of working conditions that indicates employee status. See, e.g., Godlewska v. HAD, 916 F. Supp. 2d 246, 260 (E.D.N.Y. 2013) (granting summary judgment, concluding that "[q]uality control and compliance monitoring that stem from the  nature of the goods or services being delivered" is not indicative of an employment relationship); Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590, 608 (E.D.N.Y. 2012) (granting summary judgment, noting that while "Defendants certainly had some degree of control over . . . branding (*i.e.*, the car decals and uniforms), as well as the overall safe performance of the Plaintiffs in their tasks," their control was "not so great as to weigh in favor of finding the Plaintiffs to be employees as opposed to independent contractors"); Jacobson v. Comcast Corp., 740 F. Supp. 2d 683, 691-92 (D. Md. 2010) (finding cable technicians to be independent contractors notwithstanding certain performance standards and

noting, "[i]t is . . . significant that the control Comcast does exercise is in part designed to protect Comcast customers," which is "qualitatively different from the control exercised by employers over employees").

Also, a service provider's ability to set his or her own schedule is strongly indicative of independent contractor status. See, e.g., Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 171 (2d Cir. 1998) (finding fact that a worker is "free to set his own schedule and take vacations when he wished" is strongly indicative of independent contractor status.)

Also it is important to emphasize that none of the plaintiffs had a written contract with any of the defendants. Also none of the plaintiffs was asked by the defendants to enter into or sign any written contract. All the transactions between plaintiffs and defendants were governed by verbal agreement. (Defendants' 56.1 Stmt. at ¶¶156 & 157.) However, even in situations where there is a written contract between that parties the determination of whether a worker is treated as an employee or an independent contractor under FLSA is not based on contractual formalism but on "economic realities." Gayle v. Harry's Nurses Registry, Inc., 594 F. App'x 714, HI (2d Cir. 2014) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 727 (1947)). See also Nassau Edu. Chapter of Civil Service Employees Ass'n, Inc., 85 A.D.2d 733, 445 N.Y.S.2d 812 (1981) (explaining that when investigating the distinction between the employee-employer and the employer-independent contractor relationship, "[m]ere examination of the agreement between the parties will not suffice ... for it is necessary to look behind the terms of the contract to determine the actual relationship") (internal citations omitted).

Based on the foregoing, it is submitted that defendants did not exercise any degree of control over plaintiffs that created an employer-employee relationship.

9

B.      **THE OPPORTUNITY FOR PROFIT OR LOSS AND INVESTMENT IN THE BUSINESS:**

In the case at bar, there are only six plaintiffs. Three out of these six plaintiffs, namely, Feabon Thomas, Germaine Allen, Michael Cooke, owned the vehicles with which they transported passengers for the defendants. Denis Wilson owned the vehicle with which he transported passengers for defendants from 2008 to 2012 and leased a vehicle from Louison & Pancham Transportation Corp. from part of 2012 to 2015 when he stopped transporting passengers for defendants. Christopher Ricketts and Cashmere Mudcyh also leased their vehicles. (Defendants' 56.1 Stmt. at ¶¶ 152 &154.). Plaintiffs were responsible for the maintenance of their vehicles, as well as for the payment of insurance on their vehicles. (Defendants' 56.1 Stmt. at ¶¶ 91, 134, 135 & 179.)  Defendants did not provide plaintiffs any equipment with which to transport passengers. (Defendants' 56.1 Stmt. at ¶ 181.)

 Plaintiffs were not paid salary by defendants instead they received commissions or percentages per passenger they transported for defendants. (Defendants' 56.1 Stmt. at ¶ 180.) The number of days the plaintiffs worked for in a week was determined by the plaintiffs based on their needs and not by a fixed schedule or mandate by defendants. (Defendants' 56.1 Stmt. at ¶ 71.) Plaintiffs were not guaranteed a certain amount of money per week. The amount of money made by plaintiffs depended on the number of hours they put in and the number of rides they took. (Defendants' 56.1 Stmt. at ¶ 183.).

In addition to the fact that plaintiffs kept 75% of the fares they collected from passengers they also received tips from those passengers and kept the tips without sharing them with the defendants. (Defendants' 56.1 Stmt. at ¶ 155.) Plaintiff Wilson testified that when he was not transporting passengers for defendants he could use his vehicle to take private customers and do

whatever he wanted with his vehicle. (Defendants' 56.1 Stmt. at ¶ 172.) When Plaintiff Feabon
Thomas was transporting passengers for defendants he had his own business card with the name
"Fabian Transportation" which he would give to potential passengers and customers whom he
transported. (Defendants' 56.1 Stmt. at ¶ 169.) Plaintiff Michael Cooke collected fares
amounting to $11,149.77 from passengers and kept it to himself. Despite repeated demands he
refused to give defendants their percentage of the money. (Defendants' 56.1 Stmt. at ¶ 173.)

In <u>Saleem v. Corporate Transp. Group, Ltd.,</u> 52 F. Supp. 3d 526 - Dist. Court, SD New
York 2014 at 540 the court held that the drivers had an opportunity for profit and loss in their
businesses and that they made substantial investments in their businesses because most of the
drivers either bought or rented franchises which they could in turn sell or lease and they also
spent money buying or renting their cars, maintaining their cars, buying gasoline, paying the
costs associated with their TLC licenses, and procuring insurance.

In <u>Arena V. Delux Transp. Services, Inc.,</u> 3 F. Supp. 3d 1 - Dist. Court, ED New York
2014 at 12, where the drivers received their revenues from fares paid by passengers, (just like the
case at bar); the court held that the drivers had the opportunity for profit and loss because the
drivers principally controlled how much overall money they earned as a result of the number of
jobs they took. See also <u>Browning v.Ceva Freight, LLC and EGL, LLC,</u>885 F.Supp.2d 590 2012
at 608

In <u>Arena V. Delux Transp. Services, Inc.,</u> id, still on the issue of opportunity for profit
and loss, the court further stated as follows:

> ***"Therefore, even considering Plaintiff's claim that his compensation was diminished
> because of the amount he paid for the daily lease, Plaintiff controlled on how much
> overall money he earned as a result of the number of calls he took and fares he
> earned."***

The fact that plaintiffs, in the case at bar, had an opportunity for profit and loss in their

businesses is clearly illustrated by the testimony of Plaintiff Germaine Allen**.** He testified that the reason he stopped transporting passengers for defendants was because he was not making enough money due to the fact that defendants' fleet got bigger. (Defendants' 56.1 Stmt. at ¶ 171.). It is also noteworthy that plaintiffs wanted to have their independence and to be free to use anytime they were not using to transport passengers for defendants to engage in their own personal business. And, indeed, plaintiffs engaged in private businesses while transporting passengers for defendants. (Defendants' 56.1 Stmt. at ¶¶ 169 & 182.)

## C. THE DEGREE OF SKILL AND INDEPENDENT INITIATIVE REQUIRED TO PERFORM THE WORK:

It is submitted that that while transporting passengers for defendants, plaintiffs performed activities that involved significant skills and the use of independent initiative. First of all it is undisputed that plaintiffs, as drivers, transported passengers for defendants.  (Defendants' 56.1 Stmt. at ¶ 170.) Plaintiffs testified that all drivers who transported passengers for defendants were required to have commercial driver's license. In addition to that they were also required to have "passenger endorsement" which is a special skill and considered the next level after commercial driver's license. Furthermore, plaintiffs testified that they were also required to know the airports in and out. (Defendants' 56.1 Stmt. at ¶ 170.) Plaintiff, Germaine Allen testified that before he started driving for defendants, defendants trained him on how the airport works, how to drive around the airport, how to write up trip sheets, do credit cards and so on. (Defendants' 56.1 Stmt. at ¶184.) Plaintiff, Denis Wilson testified that while transporting passengers for defendants his responsibilities included accepting passengers from dispatchers and transporting them from one airport to another, to private residences and hotels. These rides include shuttle and shared rides. (Defendants' 56.1 Stmt. at ¶185.) Defendants did not monitor

plaintiffs while plaintiffs transported passengers for them and plaintiffs were not mandated by defendants to take any particular routes while transporting passengers. Defendants were free to use any route they deemed fit. (Defendants' 56.1 Stmt. at ¶¶165, & 166.)

In Leach v. Kaykov, 2011 WL 1240022,*19 (E.D.N.Y. 2011) the court held that, the fact that plaintiff maintained his own and a taxicab driver's licenses, operated his motor vehicle, and navigated between points of pick-up and delivery, was characteristic of an independent contractor.

In Arena V. Delux Transp. Services, Inc., 3 F. Supp. 3d 1 - Dist. Court, ED New York 2014 at 12, the court found that in order for plaintiff to drive for Delux Transp. Services, Inc. he had to know how to drive and be licensed by the Town of Hempstead and how to follow Town Code guidelines covering taxi cab drivers. He also had to navigate his routes and maintain safety of his drivers. He also had to have the initiative to accept dispatched calls and transport his passengers in an efficient manner. The court then concluded that this constituted a skill set sufficient to favor against employee status.

### D.        THE PERMANENCE OR DURATION OF THE RELATIONSHIP:

None of the plaintiffs had a written contract with any of the defendants. (Defendants' 56.1 Stmt. at ¶156.). Plaintiffs' understanding with defendants was that plaintiffs could quit at anytime if they were not satisfied with the terms and conditions of their services. There was no obligation to work for a certain amount of time. (Defendants' 56.1 Stmt. at ¶160.) Plaintiffs were not required to give notice to defendants before quitting. (Defendants' 56.1 Stmt. at ¶160.)

In Saleem v. Corporate Transp. Group, Ltd., 52 F. Supp. 3d 526 - Dist. Court, SD New York 2014 at 543 the court court's view was that although the agreements are of an indefinite duration drivers could terminate the agreements at will, a fact that courts have found favors a

finding of independent contractor status. See also Browning v.Ceva Freight, LLC and EGL, LLC,885 F.Supp.2d 590 2012 at 610.

**E.      THE EXTENT TO WHICH EMPLOYEES ARE INTEGRAL TO BUSINESS:**

Even though plaintiffs' work could be argued to be an integral part of defendants' business model, this factor does not weigh in favor of plaintiffs in the case at bar because plaintiffs' work as drivers was interchangeable with the work of other drivers.  When one driver refused work, other drivers filled in because defendants always had sufficient drivers. (Defendants' 56.1 Stmt. at ¶186.) This is even more so in this case since there are only 6 plaintiffs. (Defendants' 56.1 Stmt. at ¶152). See Velu v. Velocity Express, Inc., 666 F. Supp. 2d 300 - Dist. Court, ED New York 2009 at 307-08, Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590 - Dist. Court, ED New York 2012 at 610.

Plaintiff Germaine Allen testified that the reason he stopped transporting passengers for defendants was because he was not making enough money due to the fact that defendants' fleet *got bigger*. (Defendants' 56.1 Stmt. at ¶ 171.). His testimony is a reinforcement of the fact that defendants had other drivers whose services could be interchanged with the services rendered by the plaintiffs.

## POINT II

### IT IS UNDISPUTED THAT PLAINTIFFS WERE INDEPENDENT CONTRACTORS UNDER THE NEW YORK LABOR LAW ("NYLL") AND NOT EMPLOYEES

Under the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the

14

results produced or the means used to achieve the results." Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198 (2003). Factors relevant to this inquiry include "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." Id.; see Edwards v. Publishers Circulation Fulfillment, Inc., 268 F.R.D. 181, 184 (S.D.N.Y. 2010).

As amply established under "POINT I" above, defendants did not exercise any degree of control over plaintiffs that created an employer-employee relationship. Plaintiffs worked at their own convenience and the number of days the plaintiffs worked for in a week was determined by the plaintiffs based on their needs and not by a fixed schedule or mandate by defendants. (Defendants' 56.1 Stmt. at ¶ 71.) Plaintiffs did not have a fixed schedule and were free to engage in other employment and had a transportation arrangement with defendants that was generally devoid of employer-employee control. (Defendants' 56.1 Stmt. at ¶ ¶ 155, 158, 159, 161-169, 172 and 175.) Also plaintiffs could engage in other employment. (Defendants' 56.1 Stmt. at ¶¶ 169 & 182.)

Under the NYLL, the degree of control is critical to the independent contractor analysis as courts have recognized that "[i]ncidental control over the results produced—without further evidence of control over the means employed to achieve the results—will not constitute substantial evidence of an employer- employee relationship." In re Hertz Corp., 2 N.Y.3d 733, 735, 778 N.Y.S.2d 743 (2004).

In the Claim of Pavan, 173 A.D.2d 1036, 570 N.Y.S.2d 696 (3rd Dep't 1991) the court concluded that even though drivers had to let the dispatcher know when they would be unavailable for extended periods of time, that only indicated "incidental control over the results produced" and did not establish employer-employee relationship.

Also it is undisputed that plaintiffs did not receive fringe benefits from defendants and were not on the defendant' payroll. (Defendants' 56.1 Stmt. at ¶ ¶ 153 and 174).  The fact that plaintiffs as drivers received no salary but only retained a percentage of the fares favors of a finding of independent contractor. <u>Barak v. Chen</u>, 87 A.D.3d 955, 929 N.Y.S.2d 315, 318 (2d Dep't 2011); see also <u>Chaouni v. Ali</u> 963 N.Y.S.2d at 28; <u>Abouzeid v. Grgas</u>, 295 A.D.2d 376, 743 N.Y.S.2d 165, 166 (2d Dep't 2002); <u>Irrutia v. Terrero</u>, 227 A.D.2d 380, 642 N.Y.S.2d 328, 329 (2d Dep't 1996).


## <u>POINT III</u>


### <u>IT IS UNDISPUTED THAT PLAINTIFFS WERE NOT ENTITLED TO MINIMUM WAGE UNDER FLSA AND/OR NYLL AND THAT PLAINTIFFS RECEIVED MORE THAN ADEQUATE COMPENSATION FOR THE PASSENGERS THEY TRANSPORTED FOR DEFENDANTS</u>

Minimum wage provisions apply only to workers who are employees and not independent contractors. <u>Kavazanjian v. Naples</u>, 2006 WL 2795220, at *1 (E.D.N.Y. Sept. 26, 2006) (citing 29 U.S.C. § 206(a)); <u>Wang v. Hearst Corp.</u>, 2016 WL 4468250, at *4 (S.D.N.Y. Aug. 24, 2016) (both FLSA and NYLL minimum wage requirement "applies only to employees").

As demonstrated in the arguments in "POINT I" and "POINT II" above, plaintiffs transported passengers for defendants as independent contractors not employees. Thus, plaintiffs' argument that defendants failed to pay them minimum wage under the FLSA and NYLL is without merit. Plaintiffs and defendants had an arrangement wherein plaintiffs transported passengers for defendants. Under this arrangement plaintiffs collected fares directly from passengers and kept 75% of whatever they collected and gave defendants 25%. (Defendants'

56.1 Stmt. at ¶153.) Plaintiffs wanted to have their independence and be free to use anytime they were not using to transport passengers for defendants to engage in their own personal business. (Defendants' 56.1 Stmt. at ¶182.)

In addition to the fact that plaintiffs kept 75% of the fares they collected from passengers they also received tips from those passengers and kept the tips without sharing them with the defendants. (Defendants' 56.1 Stmt. at ¶ 155.) Sometimes plaintiffs would abuse this arrangement with defendants by keeping all the fares they received from passengers and not giving defendants their percentage. For example Plaintiff Michael Cooke collected fares amounting to $11,149.77 from passengers and kept it to himself. Despite repeated demands he refused to give defendants their percentage of the money. (Defendants' 56.1 Stmt. at ¶ 173.)

Based on the foregoing, it is submitted that, under the transportation arrangement between plaintiffs and defendants, plaintiffs were not entitled to minimum wage and that plaintiffs received more than adequate compensation for the passengers they transported for defendants as independent contractors.

## **POINT IV**

## **PLAINTIFFS CANNOT RELY ON THE CONTRACT BETWEEN DEFENDANTS AND THE PORT AUTHORITY TO ESTABLISH THAT THEY WERE EMPLOYEES OF DEFENDANTS**

Plaintiffs in their Motion tried to argue that the contract between defendants and the Port Authority (Defendants' Exhibit "K") could be a basis on which to determine if the relationship between plaintiffs and defendants is an employer-employee relationship. It is submitted that this attempt is erroneous. Firstly, the Port Authority contract clearly provided that defendants as "Permittee" desired to operate their Shared Ride Service and Additional Service by means of

independent contractor arrangements with drivers and that the Port Authority had no objection to that. (Defendants' 56.1 Stmt. at ¶ 176.)

Also, most times the Port Authority would know that drivers who transported passengers for defendants were not complying with the terms of the contract but they would not bother defendants about that because they knew that the from a practical point of view it would be too cumbersome for defendants follow all the terms of the contract. (Defendants' 56.1 Stmt. at ¶ 177.) The Port Authority has the discretion to take any action they wanted to enforce the contract and most times they will show defendants tremendous understanding and leniency because they know that it is not easy to control our drivers to comply strictly with all the terms of the contract. (Defendants' 56.1 Stmt. at ¶ 178.)

Plaintiffs have not adduced any evidence from the Port Authority to show that defendants followed or complied with the terms of the contract in their operations or mandated their drivers to follow or comply with the terms of the contract. In fact, Plaintiff, Feabon Thomas testified that he did not know the terms of the Port Authority Contract.  (Defendants' 56.1 Stmt. at ¶45.)

As argued in the preceding paragraphs, whether a worker is treated as an employee or an independent contractor under FLSA is determined not by contractual formalism but by "economic realities." Gayle v. Harry's Nurses Registry, Inc., 594 F. App'x 714, *HI* (2d Cir. 2014) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 727 (1947)). See also Nassau Edu. Chapter of Civil Service Employees Ass'n, Inc., 85 A.D.2d 733, 445 N.Y.S.2d 812 (1981) (explaining that when investigating the distinction between the employee-employer and the employer-independent contractor relationship, "[m]ere examination of the agreement between the parties will not suffice ... for it is necessary to look behind the terms of the contract to determine the actual relationship") (internal citations omitted).

18

Also at the summary judgment level, "not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." <u>Lendino v. Trans Union Credit Information Co</u>. 949 F.2d 970 (2nd Cir. 1992). Thus, the Port Authority contract should not be used to draw an inference in favor of an employment relationship between plaintiffs and defendants.

## <u>CONCLUSION</u>

Even though, defendants have demonstrated, in the preceding paragraphs that plaintiffs transported passengers for them as independent contractor, not as employees, defendants are also aware that the Supreme Court has recognized that "FLSA claims typically involve complex mixed questions of fact and law." <u>Barrentine v. Arkansas-Best Freight Sys.</u>, 450 U.S. 728, 743 (1981); see also <u>Lilley v. BTM Corp.</u>, 958 F.2d 746, 750 n. 1 (6th Cir. 1992) ("Whether a FLSA plaintiff is an employee is a mixed question of law and fact"); <u>Lauritzen</u>. 835 F.2d at 1542 (Easterbrook, J., concurring) (noting that "if we are to have multiple factors, we should also have a trial" because "[a] fact-bound approach calling for the balancing of incommensurables, an approach in which no ascertainable legal rule determines a unique outcome, is one in which the trier of fact plays the principal part").

Thus, many courts have found such questions appropriate for resolution by a jury. <u>Hana Fin., Inc.</u>, 135 S. Ct. at 911 ("[T]he application-of-legal-standard-to-fact sort of question ..., commonly called a 'mixed question of law and fact,' has typically been resolved by juries'") (quoting <u>United States v. Gaudin</u>, 515 U.S. 506, 512 (1995)).

For the foregoing reasons, defendants respectfully request this Court to deny Plaintiffs' Motion for Summary Judgment.

Dated: April 14, 2017
Brooklyn, New York



By:      John Iwuh, Esq. [JI-2361]
801 Franklin Avenue,
Brooklyn, New York 11238
Tel. No. :( 718) 855-9595
Direct Dial: (347) 442-5089


TO:     <u>VIA EMAIL & HAND DELIVERY</u>
Jeffrey R. Maguire, Esq.
Borrelli & Associates, P.L.L.C.
*Attorney(s) for Plaintiffs*
655 Third Avenue, Suite 1821
New York, New York 10017

20